**Entered on Docket**
**November 05, 2009**

_Bruce A. Markell_ (signature)
_____
**Hon. Bruce A. Markell**
**United States Bankruptcy Judge**

GORDON SILVER
BRIGID M. HIGGINS, ESQ.
Nevada Bar No. 5990
E-mail: bhiggins@gordonsilver.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>RAVELLO LANDING, LLC,<br>a Nevada limited liability company,<br><br>Debtor. | Case No.: BK-S-09-15672-BAM<br>Chapter 11<br><br>Confirmation Hearings:<br>Date: October 21 and 26, 2009 |

## ORDER CONFIRMING PLAN

The First Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code filed by Ravello Landing, LLC, a Nevada limited liability company ("Debtor"), filed on August 21, 2009 [Docket No. 57], having been transmitted to creditors and equity security holders;

It having been determined after hearing on notice that the requirements for confirmation set forth in 11 U.S.C. §§ 1129(a) and (b) have been satisfied; and

The Court having rendered its findings of fact and conclusions of law on the record at the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101917-002/691486

1  continued confirmation hearing on October 26, 2009, which are incorporated herein pursuant to

2  Fed. R. Civ. P. 52(a), made applicable to this matter pursuant to Fed. R. Bankr. P. 9014(c) and

3  7052;

4          IT IS ORDERED that:

5          The Plan filed by Debtor on August 21, 2009 is confirmed.  A copy of the confirmed plan

6  is attached as Exhibit 1 hereto.

7

8

9  PREPARED AND SUBMITTED BY:

10  GORDON SILVER

11

12  By:_____
    BRIGID M. HIGGINS, ESQ.
13  Nevada Bar No. 6654
    MATTHEW C. ZIRZOW, ESQ.
14  Nevada Bar No. 7222
    3960 Howard Hughes Pkwy., 9th Floor
15  Las Vegas, NV 89169
16  Attorneys for Debtor

17  APPROVED/DISAPPROVED:                    APPROVED/DISAPPROVED:

18  BROOKS BAUER, LLP                        OFFICE OF THE UNITED STATES TRUSTEE

19

20  By:   /s/ Michael R. Brooks, Esq.        By: _____No Response_____
21  MICHAEL R. BROOKS, ESQ.                  EDWARD MCDONALD
    Nevada Bar No. 7287                      300 Las Vegas Boulevard South, Rm. 4300
22  300 S. 4th Street, Suite 815             Las Vegas, NV 89101
    Las Vegas, NV 89101
23  Attorneys for East West Bank

24  . . .

25  . . .

26  . . .

27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101917-002/691486                    2

1

## LR 9021 CERTIFICATION

2

In accordance with LR 9021, counsel submitting this document certifies as follows:

3

    ☐    The Court waived the requirement of approval under LR 9021.

4

    ☐    No parties appeared or filed written objections, and there is no trustee

5

appointed in this case.

6

    ☒    A copy of this proposed order was delivered to all counsel who appeared
at the hearing, any unrepresented parties who appeared at the hearing, and

7

any trustee appointed in this case, and each has approved or disapproved
the order, or failed to respond, as indicated below:

8

9

Michael R. Brooks, Esq.: Approved

10

Edward McDonald, Office of the U.S. Trustee: No Response.

11

### 

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101917-002/691486

3

# EXHIBIT 1

1  GORDON SILVER
   BRIGID M. HIGGINS, ESQ.
2  Nevada Bar No. 5990
   E-mail: bhiggins@gordonsilver.com
3  MATTHEW C. ZIRZOW, ESQ.
   Nevada Bar No. 7222
4  E-mail: mzirzow@gordonsilver.com
5  3960 Howard Hughes Pkwy., 9th Floor
   Las Vegas, Nevada 89169
6  Telephone (702) 796-5555
   Facsimile (702) 369-2666
7  Attorneys for Debtor

E-Filed: August 21, 2009

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-S-09-15672-BAM |
| | Chapter 11 |
| RAVELLO LANDING, LLC, | |
| a Nevada limited liability company, | |
| | Confirmation Hearing: |
| Debtor. | Date:   October 21, 2009 |
| | Time:  1:30 p.m. |

## DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

101758-002/719831_3.doc

# TABLE OF CONTENTS

**1.    DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME** ...................................................................................... 1

    **1.1.**    Definitions ........................................................................................ 1

        **1.1.1.**    Administrative Claim ........................................................ 1
        **1.1.2.**    Administrative Claim Bar Date. ......................................... 1
        **1.1.3.**    Affiliate. ............................................................................ 1
        **1.1.4.**    Allowed Administrative Claim. .......................................... 1
        **1.1.5.**    Allowed Claim. .................................................................. 2
        **1.1.6.**    Allowed Equity Security .................................................... 2
        **1.1.7.**    Assets. ............................................................................... 2
        **1.1.8.**    Available Cash. .................................................................. 2
        **1.1.9.**    Avoidance Actions. ........................................................... 2
        **1.1.10.**    Ballot. ............................................................................ 2
        **1.1.11.**    Bankruptcy Code. ........................................................... 2
        **1.1.12.**    Bankruptcy Court. .......................................................... 2
        **1.1.13.**    Bankruptcy Rules. .......................................................... 2
        **1.1.14.**    Bar Date. ........................................................................ 3
        **1.1.15.**    Business Day. .................................................................. 3
        **1.1.16.**    Cash. ............................................................................... 3
        **1.1.17.**    Chapter 11 Case. ........................................................... 3
        **1.1.18.**    Claim. ............................................................................. 3
        **1.1.19.**    Class. .............................................................................. 3
        **1.1.20.**    Confirmation. ................................................................. 3
        **1.1.21.**    Confirmation Date. ......................................................... 3
        **1.1.22.**    Confirmation Hearing. .................................................... 3
        **1.1.23.**    Confirmation Order. ........................................................ 3
        **1.1.24.**    Contingent Claim. ........................................................... 3
        **1.1.25.**    Creditor. ......................................................................... 3
        **1.1.26.**    Cure. ............................................................................... 3
        **1.1.27.**    Debtor. ........................................................................... 4
        **1.1.28.**    Disbursing Agent. ........................................................... 4
        **1.1.29.**    Disclosure Statement. ..................................................... 4
        **1.1.30.**    Disputed Claim or Disputed Equity Security .................... 4
        **1.1.31.**    Disputed Claim Reserve or Disputed Equity Security Reserve. .............. 4
        **1.1.32.**    Distributable Assets. ....................................................... 4
        **1.1.33.**    Distribution. ................................................................... 4
        **1.1.34.**    Distribution Date. ........................................................... 5
        **1.1.35.**    East-West Bank. .............................................................. 5
        **1.1.36.**    East-West Bank Collateral. .............................................. 5
        **1.1.37.**    East West Deed of Trust. ................................................. 5
        **1.1.38.**    East West Loan Documents. ............................................ 5
        **1.1.39.**    East-West Note. .............................................................. 5
        **1.1.40.**    Effective Date. ................................................................ 5
        **1.1.41.**    Equity Security ............................................................... 5

i

| | |
|---|---|
| **1.1.42.** | Estate. ........................................................................................ 5 |
| **1.1.43.** | Exit Facility. ............................................................................... 5 |
| **1.1.44.** | Federal Judgment Rate. .............................................................. 5 |
| **1.1.45.** | Final Distribution. ..................................................................... 5 |
| **1.1.46.** | Final Distribution Date. ............................................................. 6 |
| **1.1.47.** | Final Order. ............................................................................... 6 |
| **1.1.48.** | First Amendment To Forbearance Agreement. ......................... 6 |
| **1.1.49.** | Forbearance Agreement. ............................................................ 6 |
| **1.1.50.** | General Unsecured Claim. ......................................................... 6 |
| **1.1.51.** | Governmental Or Regulatory Authority. .................................. 6 |
| **1.1.52.** | IRS. ............................................................................................ 6 |
| **1.1.53.** | IRS Priority Claim. .................................................................... 6 |
| **1.1.54.** | Initial Distribution Amount. ...................................................... 6 |
| **1.1.55.** | Initial Distribution Date. ........................................................... 6 |
| **1.1.56.** | Insider. ...................................................................................... 6 |
| **1.1.57.** | Insider Claim. ............................................................................ 6 |
| **1.1.58.** | Legal Interest Rate. ................................................................... 6 |
| **1.1.59.** | License. ...................................................................................... 6 |
| **1.1.60.** | Lien. ........................................................................................... 6 |
| **1.1.61.** | Litigation Claims. ...................................................................... 7 |
| **1.1.62.** | Nevada Secretary. ...................................................................... 7 |
| **1.1.63.** | Person. ....................................................................................... 7 |
| **1.1.64.** | Petition Date. ............................................................................. 7 |
| **1.1.65.** | Plan. ........................................................................................... 7 |
| **1.1.66.** | Plan Supplement. ....................................................................... 7 |
| **1.1.67.** | Post-Petition Interest. ................................................................ 7 |
| **1.1.68.** | Pre-Petition Contract Interest Rate. .......................................... 7 |
| **1.1.69.** | Priority Claim. ........................................................................... 7 |
| **1.1.70.** | Pro Rata. .................................................................................... 7 |
| **1.1.71.** | Professional Fees. ...................................................................... 7 |
| **1.1.72.** | Real Property. ............................................................................ 7 |
| **1.1.73.** | Record Date. .............................................................................. 8 |
| **1.1.74.** | Reinstated or Reinstatement. ..................................................... 8 |
| **1.1.75.** | Reorganized Debtor. .................................................................. 8 |
| **1.1.76.** | Reorganized Ravello. ................................................................. 8 |
| **1.1.77.** | Schedules. .................................................................................. 8 |
| **1.1.78.** | Secured Claim. ........................................................................... 8 |
| **1.1.79.** | Secured Tax Claims. .................................................................. 8 |
| **1.1.80.** | Taxes. ......................................................................................... 8 |
| **1.1.81.** | Transferred Assets. .................................................................... 9 |
| **1.1.82.** | Computation of Time. ................................................................ 9 |
| **1.1.83.** | Rules of Interpretation. ............................................................. 9 |
| **2.** | **TREATMENT OF UNCLASSIFIED CLAIMS** .................................... 9 |
| **2.1.** | General. ...................................................................................... 9 |
| **2.2.** | Treatment of Administrative Claims. ......................................... 9 |
| **2.2.1.** | Generally. ................................................................................... 9 |

ii

**2.2.2.**  Requests for Payment. ................................................................... 9

**3.**  **DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS** ............ 9

**3.1.**  Summary of Classification. .................................................................. 10
**3.2.**  Specific Classification. ......................................................................... 10
   **3.2.1.**  Class 1: East-West Bank Secured Claim. ...................................... 10
   **3.2.2.**  Class 2:  Other Secured Claims. ................................................... 10
   **3.2.3.**  Class 3:  Priority Unsecured Claims. ............................................ 11
   **3.2.4.**  Class 4: General Unsecured Claims. ............................................. 11
   **3.2.5.**  Class 5:  Insider Claims. .............................................................. 11
   **3.2.6.**  Class 6:  Equity Securities. ........................................................... 11

**4.**  **DESIGNATION OF AND PROVISIONS FOR TREATMENT OF
CLASSES OF CLAIMS NOT IMPAIRED BY THIS PLAN** ..................................... 11

**4.1.**  Class 1 - East-West Bank Secured Claim. ............................................ 11
**4.2.**  Class 2 - Other Secured Claims. ........................................................... 12
**4.3.**  Class 3 – Unsecured Priority Claims. ................................................... 12
**4.4.**  Class 4 - General Unsecured Claims. .................................................... 12
   **4.4.1.**  Initial Distribution. ..................................................................... 12
   **4.4.2.**  Subsequent Distributions. ............................................................ 12
**4.5.**  Class 5 – Insider Claims. ..................................................................... 12
**4.6.**  Class 6 - Equity Securities. ................................................................... 13

**5.**  **MEANS FOR IMPLEMENTATION OF PLAN** ......................................................... 13

**5.1.**  Plan Implementation Occurring on Effective Date. ............................... 13
**5.2.**  Exit Facility. ........................................................................................ 13
**5.3.**  Deferral. .............................................................................................. 14
**5.4.**  No Stay. ............................................................................................... 15
**5.5.**  Continued Corporate Existence; Reincorporation. ................................ 15
**5.6.**  Certificates of Incorporation and By-laws. ........................................... 15
**5.7.**  Revesting of Assets. ............................................................................. 15
**5.8.**  Notice of Effectiveness. ....................................................................... 15
**5.9.**  No Governance Action Required. .......................................................... 15
**5.10.**  Filing with Nevada Secretary. ............................................................. 15
**5.11.**  Default Remedies. ............................................................................... 16

**6.**  **EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...................................... 16

**6.1.**  Executory Contracts. ............................................................................ 16
**6.2.**  Approval of Assumption or Rejection. .................................................. 16
**6.3.**  Cure of Defaults. .................................................................................. 16
**6.4.**  Post-Petition Date Contracts and Leases. ............................................. 16
**6.5.**  Bar Date. ............................................................................................. 17

**7.**  **MANNER OF DISTRIBUTION OF PROPERTY UNDER THIS PLAN** ............... 17

iii

101758-002/719831_3.doc

| | | |
|---|---|---|
| **7.1.** | Distributions. | 17 |
| **7.2.** | No Recourse. | 17 |
| **7.3.** | Reserves. | 17 |
| **7.4.** | Statements. | 17 |
| **7.5.** | Further Authorization. | 17 |

**8. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ...... 17

| | | |
|---|---|---|
| **8.1.** | Conditions to Confirmation. | 17 |
| **8.2.** | Conditions to Effectiveness. | 17 |

**9. TITLE TO PROPERTY; DISCHARGE; INJUNCTION** ...... 18

| | | |
|---|---|---|
| **9.1.** | Vesting of Assets. | 18 |
| **9.2.** | Preservation of Litigation Claims. | 18 |
| **9.3.** | Discharge. | 18 |
| **9.4.** | Injunction. | 18 |
| **9.5.** | Exculpation. | 18 |

**10. RETENTION OF JURISDICTION** ...... 19

| | | |
|---|---|---|
| **10.1.** | Jurisdiction. | 19 |

**11. MODIFICATION AND AMENDMENT OF PLAN** ...... 20

| | | |
|---|---|---|
| **11.1.** | Modification and Amendment. | 20 |

**12. MISCELLANEOUS** ...... 21

| | | |
|---|---|---|
| **12.1.** | Filing of Objections to Claims or Equity Securities. | 21 |
| **12.1.1.** | Resolution of Objections After Effective Date; Distributions. | 21 |
| **12.1.2.** | Distributions. | 21 |
| **12.1.3.** | Late-Filed Claims. | 21 |
| **12.2.** | Effectuating Documents; Further Transactions; Timing. | 21 |
| **12.3.** | Exemption from Transfer Taxes. | 22 |
| **12.4.** | Revocation or Withdrawal of this Plan. | 22 |
| **12.5.** | Binding Effect. | 22 |
| **12.6.** | Governing Law. | 22 |
| **12.7.** | Modification of Payment Terms. | 22 |
| **12.8.** | Providing for Claims Payments. | 23 |
| **12.9.** | Set Offs. | 23 |
| **12.10.** | Notices. | 23 |
| **12.11.** | Severabilit y. | 24 |
| **12.12.** | W ithholding and Reporting Requirements. | 24 |
| **12.13.** | Post Confirmation Reporting. | 24 |
| **12.14.** | Cramdown. | 24 |
| **12.15.** | Quarterl y Fees to the United States Trustee. | 24 |

Ravello Landing, LLC, a Nevada limited liability company ("Ravello" or "Debtor") proposes this Plan of Reorganization (the "Plan") for the resolution of Debtor's outstanding Claims and Equity Securities (as these terms are defined herein). All Creditors, Equity Security holders (as both terms are defined herein) and other parties-in-interest should refer to the Disclosure Statement (as this term is defined herein) for a discussion of Debtor's history, assets, historical financial data, and for a summary and analysis of this Plan and certain related matters. All holders of Claims against and Equity Securities in Debtor are encouraged to read this Plan, the Disclosure Statement and the related solicitation materials in their entirety before voting to accept or reject this Plan.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article 12 to this Plan, Debtor expressly reserves the right to alter, amend, strike, withdraw or modify this Plan one or more times before its substantial consummation.

## 1.    DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

**1.1.**    Definitions.  For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article 1.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, in that order of priority.  Whenever the context requires, such terms shall include the plural as well as the singular, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.  As used in this Plan, the following terms shall have the meanings specified below:

**1.1.1.**    Administrative Claim.  A Claim for any cost or expense of administration of the Chapter 11 Case allowed under Sections 503(b) or 507(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, but not limited to: (i) fees payable pursuant to 28 U.S.C. § 1930; (ii) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; and (iii) all Professional Fees approved by the Bankruptcy Court pursuant to interim and final allowances. To the extent that a Claim is allowed  pursuant to Section 365(d)(3) of the Bankruptcy Code, such Claim shall also be deemed an "Administrative Claim" under this paragraph.

**1.1.2.**    Administrative Claim Bar Date. The end of the first Business Day occurring on or after the forty-fifth (45th) day after the Effective Date.

**1.1.3.**    Affiliate. This term has the meaning set forth in Section 101(2) of the Bankruptcy Code.

**1.1.4.**    Allowed Administrative Claim. An Administrative Claim:

(a)    As to which no objection has been filed or, if an objection has been filed, has been resolved by the allowance of such Administrative Claim by a Final Order of the Bankruptcy Court; or

101758-002/719831_3.doc

1

(b)    Which requires payment in the ordinary course and as to which there is no Final Order of the Bankruptcy Court in effect which prohibits any such payment.

**1.1.5. Allowed Claim.** Any Claim, or any portion thereof, against Debtor (except for an Administrative Claim): (i) proof of which, requests for payment of which, or application for allowance of which, was filed or deemed to be filed on or before the Bar Date for filing proofs of Claim or requests for payment for Claims of such type against Debtor; or (ii) if no proof of Claim is filed, which has been or hereafter is listed by Debtor in the Schedules as liquidated in amount and not disputed or contingent; and, in either case, the portion of such Claim as to which either (x) no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (y) the Bankruptcy Court has entered a Final Order allowing such portion of such Claim. The term "Allowed" when used to modify a reference in this Plan to any Claim or Class of Claims, shall mean a Claim (or any Claim in any such Class) that is so allowed, *e.g.*, "Allowed Secured Claim" is a Secured Claim.

**1.1.6. Allowed Equity Security.** Any Equity Security as of the Record Date, (i) which is not disputed by Debtor or the Reorganized Debtor, as the case may be, or (ii) if a Disputed Equity Security, which Equity Security has been allowed in whole or in part by Final Order of the Bankruptcy Court.

**1.1.7. Assets.** All of the assets, property, (interest, including an equity interest) and effects, real and personal, tangible and intangible, wherever situated, of Debtor, as they exist on the Effective Date.

**1.1.8. Available Cash.** Available Cash means as of any date of determination, all Net Distributable Proceeds, net of any Reserve being maintained under this Plan.

**1.1.9. Avoidance Actions.** All actions preserved for the Estate including but not limited to those set forth in Sections 510, 542, 543, 544, 545, 547, 548, 549, 550 and 553(b) of the Bankruptcy Code.

**1.1.10. Ballot.** The form of ballot or ballots that will be distributed with the Disclosure Statement to holders of Claims and Equity Securities entitled to vote under this Plan in connection with solicitation of acceptances of this Plan.

**1.1.11. Bankruptcy Code.** The Bankruptcy Reform Act of 1978, Title 11, United States Code, as applicable to the Chapter 11 Case, as now in effect or hereafter amended, 11 U.S.C. §§ 101, *et seq.*

**1.1.12. Bankruptcy Court.** The Bankruptcy Court of the United States District Court for the District of Nevada or such other court as may have jurisdiction over the Chapter 11 Case.

**1.1.13. Bankruptcy Rules.** Collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court as applicable to the Chapter 11 Case, as now in effect or hereinafter amended.

101758-002/719831_3.doc

**1.1.14.** Bar Date.  The date or dates established by the Bankruptcy Court for the filing of proofs of Claim for all Creditors, excepting there from, Administrative Claims.

**1.1.15.** Business Day.  Any day other than a Saturday, Sunday or other day on which commercial banks in the State of Nevada are authorized or required by law to close.

**1.1.16.** Cash.  Currency, checks, negotiable instruments and wire transfers of immediately available funds.

**1.1.17.** Chapter 11 Case.  The case under Chapter 11 of the Bankruptcy Code involving Debtor, including all adversary proceedings pending in connection therewith.

**1.1.18.** Claim.  Any right to payment from Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.1.19.** Class.  A category of holders of Claims or Equity Securities as classified in this Plan.

**1.1.20.** Confirmation.  The entry by the Bankruptcy Court of the Confirmation Order.

**1.1.21.** Confirmation Date.  The date upon which the Bankruptcy Court enters the Confirmation Order.

**1.1.22.** Confirmation Hearing.  The duly noticed initial hearing held by the Bankruptcy Court to confirm this Plan pursuant to Section 1128 of the Bankruptcy Code, and any subsequent hearing held by the Bankruptcy Court from time to time to which the initial hearing is adjourned without further notice other than the announcement of the adjourned dates at the Confirmation Hearing.

**1.1.23.** Confirmation Order.  The order entered by the Bankruptcy Court confirming this Plan.

**1.1.24.** Contingent Claim.  A Claim which is contingent, unmatured or unliquidated on or immediately before the Confirmation Date.

**1.1.25.** Creditor.  Any holder of a Claim, whether or not such Claim is an Allowed Claim.

**1.1.26.** Cure.  The distribution on the Effective Date or as soon thereafter as practicable of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease, pursuant to Section 365(b) of the Bankruptcy Code or with respect to any other Debt Instrument, in an amount equal to: (a) all unpaid monetary obligations due under such executory

3

contract or unexpired lease or required to pay or bring current the Debt Instrument and thereby reinstate the debt and return to the pre-default conditions to the extent such obligations are enforceable under the Bankruptcy Code in applicable non-bankruptcy law; and (b) with respect to any Debt Instrument, if a claim arises from a debtor's failure to perform any non-monetary obligation as set forth in Sections 1124(2)(C) and 1124(2)(D) of the Bankruptcy Code, payment of the dollar amount which compensates the holder of such a claim for any actual pecuniary loss incurred by such holder as a result of any such failure and the dollar amount of the claim that is established by the claimants sworn declaration and accompanying admissible evidence filed with the Bankruptcy Court and served upon Debtor's counsel on or before such date ordered by the Court for the filing of objections to the disclosure statement.

**1.1.27.** Debtor.  Ravello Landing, LLC, the debtor and debtor-in-possession in the Chapter 11 Case, pursuant to Section 1108 of the Bankruptcy Code.

**1.1.28.** Disbursing Agent.  Reorganized Debtor, which shall hold and distribute certain consideration to the holders of unclassified Claims, Allowed Claims and Allowed Equity Securities on each Distribution Date.

**1.1.29.** Disclosure Statement. The written disclosure statement that relates to this Plan, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

**1.1.30.** Disputed Claim or Disputed Equity Security.  A Claim or Equity Security which is: (i) subject to timely objection interposed by Debtor, Reorganized Debtor or any party-in-interest entitled to file and prosecute such objection in the Chapter 11 Case, if at such time such objection remains unresolved; (ii) a Claim that is listed by Debtor as disputed, unliquidated or contingent in the Schedules; or (iii) if no objection has been timely filed, a Claim which has been asserted in a timely filed proof of Claim in an amount greater than or in a Class different than that listed by Debtor in the Schedules as liquidated in amount and not disputed or contingent; provided, however, that the Bankruptcy Court may estimate a Disputed Claim for purposes of allowance pursuant to Section 502(c) of the Bankruptcy Code. The term "Disputed", when used to modify a reference in this Plan to any Claim or Class of Claims or Equity Security, shall mean a Claim or Equity Security (or any Claim or Equity Security in such Class) that is a Disputed Claim or Disputed Equity Security as defined herein.  In the event there is a dispute as to classification or priority of a Claim or Equity Security, it shall be considered a Disputed Claim or Disputed Equity Security in its entirety.  Until such time as a Contingent Claim becomes fixed and absolute, such Claim shall be treated as a Disputed Claim and not an Allowed Claim for purposes related to allocations and distributions under this Plan.

**1.1.31.** Disputed Claim Reserve or Disputed Equity Security Reserve. A reserve established to hold in one or more accounts Cash or other Assets equal to the aggregate amount thereof that would have been distributed on a Distribution Date on account of a Disputed Claim or Disputed Equity Security.

**1.1.32.** Distributable Assets.  Shall mean the Assets distributable to Allowed Claims and Unclassified Claims by the Reorganized Debtor on the Distribution Date.

**1.1.33.** Distribution.  Any distribution by the Debtor or Reorganized Debtor of

Distributable Assets to the holders of Allowed Claims.

**1.1.34.** Distribution Date. Distribution Date is the business day, occurring as soon as practicable after the Effective Date of the Plan term, upon which distributions are made under this Plan to holders of Allowed Unclassified Claims and Classified Claims in Classes 3 and 4, and the Initial Distribution to Class 5.

**1.1.35.** East-West Bank. East West Bank, and its successor or assignee(s) of any right, title or interest in and to the East West Loan Documents.

**1.1.36.** East-West Bank Collateral. All the collateral as described in the East West Loan Documents.

**1.1.37.** East West Deed of Trust. The Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing between East West Bank and Ravello, recorded with the Clark County Recorder on October 12, 2006 as Book-Instrument 20061012-3533.

**1.1.38.** East West Loan Documents. Collectively, the East West Note, the East West Deed of Trust, the Forbearance Agreement and the First Amendment to Forbearance Agreement, and any and all other amendments or supplements to the foregoing.

**1.1.39.** East-West Note. The Note Secured by Deed of Trust dated October 12, 2006 between East West Bank, as lender, and Ravello, as borrower, in the original principal amount sum of $13,500,000.00.

**1.1.40.** Effective Date. The last to occur of: (i) the first Business Day that is at least eleven (11) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect and (ii) the Business Day on which all of the conditions set forth in Article 6 to this Plan have been satisfied or waived.

**1.1.41.** Equity Security. An equity security as the term is defined in Section 101(16) of the Bankruptcy Code and includes the membership interests in Debtor and any warrants, options, redemption rights, dividend rights, liquidation preferences, rights to purchase any such Equity Security or any other rights related thereto.

**1.1.42.** Estate. The estate created for Debtor in the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

**1.1.43.** Exit Facility. The Note and any related documents, agreements, and instruments, to be entered into by the Reorganized Debtor as of the Effective Date as a condition to consummation of the Plan, having terms substantially similar to the commitment sheet attached to the Disclosure Statement.

**1.1.44.** Federal Judgment Rate. The rate of interest on judgments as provided for by 28 U.S.C. § 1961 as of the Petition Date.

**1.1.45.** Final Distribution. The distribution from Reorganized Debtor which exhausts the Assets.

101758-002/719831_3.doc

5

**1.1.46.** Final Distribution Date.    The Distribution Date on which the Final Distribution is made.

**1.1.47.** Final Order.    An order, judgment or other decree of the Bankruptcy Court which has been appealed but which has not been vacated, reversed, modified or amended or stayed, or for which the time to appeal or seek review or rehearing has expired with no appeal having been filed.

**1.1.48.** First Amendment To Forbearance Agreement.    The First Amendment to Forbearance Agreement dated as of March 24, 2009 between East West Bank and Ravello.

**1.1.49.** Forbearance Agreement.    The Forbearance Agreement dated as of November 24, 2008 between East West Bank and Ravello.

**1.1.50.** General Unsecured Claim.    A Claim that is not secured by a charge against or interest in property in which the Estate has an interest and is not an Administrative Claim, Priority Claim or Insider Claim.    General Unsecured Claims shall also include all Claims arising under Section 502(g) of the Bankruptcy Code.

**1.1.51.** Governmental Or Regulatory Authority.    Any court, tribunal, arbiter, authority, agency, commission, official or other instrumentality in the United States, any foreign country or any domestic or foreign, county, city or other political subdivision.

**1.1.52.** IRS.    The Internal Revenue Service.

**1.1.53.** IRS Priority Claim.    The Allowed Claim of the IRS, other than an Administrative Expense Claim, entitled to priority in right of payment under Section 507(a) of the Bankruptcy Code.

**1.1.54.** Initial Distribution Amount.    On the Initial Distribution Date the difference between (a) the Available Cash not subject to any Lien and (b) the sum of the Disputed Claims Reserve on such date.

**1.1.55.** Initial Distribution Date. The first Business Day after the Effective Date.

**1.1.56.** Insider.    This term shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

**1.1.57.** Insider Claim.    A claim of any investor who is a party to a promissory note with Debtor prior to the Petition Date as listed on Debtor's bankruptcy Schedule F.

**1.1.58.** Legal Interest Rate.    The interest rate specified in 28 U.S.C. § 1961 applicable to judgments entered in Courts of the Unite States on the Petition Date.

**1.1.59.** License.    This term shall mean any license, permit, or other authorization issued to Debtor by a Governmental or Regulatory Authority necessary to the operation of Debtor's business.

**1.1.60.** Lien.    This term shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

101758-002/719831_3.doc

6

**1.1.61.** Litigation Claims. All rights, claims, torts, liens, liabilities, obligations, actions, causes of action, Avoidance Actions, derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that Debtor or the Estate may have against any Person, including but not limited to, those listed on Schedule 1.1.53 hereto. Failure to list a Litigation Claim on Schedule 1.1.53 shall not constitute a waiver or release by Debtor or the Reorganized Debtor of such Litigation Claim.

**1.1.62.** Nevada Secretary. The Secretary of State of the State of Nevada.

**1.1.63.** Person. An individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization or government, governmental unit or any subdivision thereof or any other entity.

**1.1.64.** Petition Date. April 14, 2009, the date on which a voluntary petition was filed commencing the Chapter 11 Case.

**1.1.65.** Plan. This plan of reorganization, either in its present form or as it may be amended, supplemented or modified from time to time, including all exhibits and schedules annexed hereto or referenced herein.

**1.1.66.** Plan Supplement. Plan Supplement means those documents containing the forms of documents and schedules as identified in the Plan.

**1.1.67.** Post-Petition Interest. Interest on an Allowed Claim from and after the Petition Date at the Post-Petition Interest Rate provided for by this Plan applicable to such claim. If no amount is otherwise specified such rate shall be the Legal Interest Rate.

**1.1.68.** Pre-Petition Contract Interest Rate. With respect to an Allowed Claim, the lawful pre-petition interest rate applicable to such Allowed Claim as determined by the contract, the agreement, the promissory note, a forbearance agreement, or other applicable law governing the accrual or payment of interest on such Allowed Secured Claim computed as if no default had occurred thereunder. For any fully matured loan or debt, it means the rate that applied immediately prior to such maturity.

**1.1.69.** Priority Claim. Any Claim against Debtor entitled to priority in payment under Section 507 of the Bankruptcy Code.

**1.1.70.** Pro Rata. The ratio of an Allowed Claim or Equity Security in a particular class to the aggregate amount of all such Allowed Claims or Allowed Equity Securities in any such Class.

**1.1.71.** Professional Fees. The Administrative Claims for compensation and reimbursement submitted pursuant to Sections 328, 330, 331 or 503(b) of the Bankruptcy Code of Persons: (i) employed pursuant to an order of the Bankruptcy Court under Section 327 of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code or by other Final Order.

**1.1.72.** Real Property. That certain real property located in the City of Henderson,

7

Clark County, Nevada, having APN 160-28-302-014, 160-28-302-015, and 160-28-303-209, and all improvements thereto.

**1.1.73.** Record Date.    The Confirmation Date for the purpose of determining the holders of Equity Securities.

**1.1.74.** Reinstated or Reinstatement.    These terms shall mean: (i) leaving unaltered the legal, equitable and contractual rights of the holder of a Claim so as to leave such Claim unimpaired in accordance with Section 1124 of the Bankruptcy Code; or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (a) Curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (b) reinstating the maturity of such Claim as such maturity existed before such default; (c) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (d) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required in order to accomplish Reinstatement.

**1.1.75.** Reorganized Debtor.  The Debtor as reorganized pursuant to this Plan after the Effective Date.

**1.1.76.** Reorganized Ravello.  The Debtor, Ravello Landing, LLC, on and after the Effective Date.

**1.1.77.** Schedules.  The schedules of assets and liabilities and any amendments thereto filed by Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code.

**1.1.78.** Secured Claim.  A Claim that is secured by a Lien against property of the Estate to the extent of the value of any interest in such property of the Estate securing such Claim or to the extent of the amount of such Claim subject to setoff in accordance with Section 553 of the Bankruptcy Code, in either case as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.1.79.** Secured Tax Claims. The Claim of any state or local governmental unit which is secured by a Lien against property owned by Debtor by operation of applicable law, including, but not limited to, every such Claim for unpaid real and personal property taxes together with statutory interest.

**1.1.80.** Taxes.  All income, gaming, franchise, excise, sales, use, employment, withholding, property, payroll or other taxes, assessments, of governmental charges, together with any interest penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local or foreign governmental authority.

8

101758-002/719831_3.doc

**1.1.81.** Transferred Assets.  All Assets and property transferred or revested in Reorganized Debtor pursuant to this Plan.

**1.1.82.** Computation of Time.  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**1.1.83.** Rules of Interpretation.  For purposes of this Plan only; (i) any reference in this Plan to a contract, instrument, release, or other agreement or documents being in particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (iii) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (iv) the words "herein," "hereof," "hereto," and "hereunder" refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (vi) the rules of construction and definitions set forth in Sections 101 and 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply unless otherwise expressly provided.

## 2.    TREATMENT OF UNCLASSIFIED CLAIMS

**2.1.**    General.  Pursuant to Section 1123(a) (1) of the Bankruptcy Code, the Claims against Debtor set forth in this Article 2 are not designated as Classes.  The holders of such Claims are not entitled to vote on this Plan.  The treatment of the Claims set forth below is consistent with the requirements of Section 1129(a)(9)(A) of the Bankruptcy Code.

**2.2.**    Treatment of Administrative Claims.  Generally.  Each Allowed Administrative Claim shall be paid by the Reorganized Debtor (or otherwise satisfied in accordance with its terms) upon the latest of:  (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (iii) the tenth (10th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the holder of such Claim and Debtor shall agree upon.

**2.2.2.**  Requests for Payment.  All requests for payment of Administrative Claims against Debtor and all final applications for allowance and disbursement of Professional Fees must be filed by the Administrative Claims Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against Debtor and the Reorganized Debtor.  All Professional Fees applications must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and all other orders governing payment of Professional Fees.  All Professional Fees applications may be later amended to include any fees and costs incurred after the Effective Date.

## 3.    DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

Pursuant to this Plan and in accordance with Section 1123(a)(1) of the Bankruptcy Code,

101758-002/719831_3.doc

all Claims of Creditors and the holders of Equity Securities (except Administrative Claims and Priority Tax Claims) are placed in the Classes described below. A Claim or Equity Security is classified in a particular Class only to the extent that the Claim or Equity Security qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim or Equity Security qualifies within the description of such other Classes. A Claim or Equity Security is also classified in a particular Class only to the extent that such Claim or Equity Security is an Allowed Claim or Allowed Equity Security in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date. With respect to Classes of Claims described as unimpaired under the Plan, except as otherwise provided under this Plan, nothing shall affect the rights and legal and equitable defenses of Debtor and Reorganized Debtor regarding such Claims classified as unimpaired under this Plan, including but not limited to, all rights in respect of legal and equitable defenses to setoff or recoupment against such Claims.

     **3.1.**    Summary of Classification.

| Class | Description | Treatment | Estimated Amount of Claims |
|---|---|---|---|
| Class 1 | East-West Bank Secured Claim | Impaired. Solicitation required. | $15,000,000.00 |
| Class 2 | Other Secured Claims | Unimpaired. No solicitation required. | $0.00 |
| Class 3 | Priority Unsecured Claims | Unimpaired. No solicitation required. | $5,224.34 |
| Class 4 | General Unsecured Claims | Impaired. Solicitation required. | $25,116.49 |
| Class 5 | Insider Claims | Impaired. Solicitation required. | $293,870.00 |
| Class 6 | Equity Securities | Unimpaired. No solicitation required. | N/A |

     **3.2.**    Specific Classification.

       **3.2.1.**  **Class 1: East-West Bank Secured Claim.** Class 1 consists of all of the East-West Bank Claims.

       **3.2.2.**  **Class 2: Other Secured Claims.** Class 2 consists of all Secured Claims other than the East West Bank Secured Claim. Each holder of Secured Claim shall be considered to be its own separate subclass within Class 2, and each subclass shall be deemed to be a separate class for purposes of this Plan. Debtor may add any additional secured creditors as an additional separate subclass.

**3.2.3.** Class 3: Priority Unsecured Claims. Class 3 consists of all Priority Unsecured Claims.

**3.2.4.** Class 4: General Unsecured Claims. Class 4 consists of all General Unsecured Claims.

**3.2.5.** Class 5: Insider Claims. Class 5 consists of all Insider Claims.

**3.2.6.** Class 6: Equity Securities. Class 6 consists of all Equity Securities.

4.    **DESIGNATION OF AND PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS NOT IMPAIRED BY THIS PLAN**

**4.1.** Class 1 - East-West Bank Secured Claim. Class 1 is comprised of the Allowed Claim of East-West Bank. The East-West Bank Claim is secured by a lien upon the East-West Bank Collateral. Upon the Effective Date, the East-West Bank Claim, and the Debtor's obligations under the East West Loan Documents, shall be modified as provided herein:

**4.1.1.** Subject to the provisions herein, East West Bank shall retain its lien on the Collateral in the amount specified in the East West Loan Documents until it is paid in full the amount contemplated hereby.

**4.1.2.** From the Petition Date through the Effective Date of the Plan, interest shall continue to accrue on the unpaid principal sum at the applicable Pre-Petition Contract Interest Rate.

**4.1.3.** After the Effective Date and until the East West Bank Secured Claim is paid in full (including any post-petition accrued but unpaid interest or other allowed but unpaid additions), interest shall continue to accrue on the unpaid principal sum at the applicable Pre-Petition Contract Interest Rate.

**4.1.4.** The East West Claim (including any post-petition accrued but unpaid interest or other allowed but unpaid additions) shall be paid in full in Cash no later than the conclusion of the Deferral Period (as hereinafter defined). If the East West Claim is not satisfied in full by the conclusion of the Deferral Period, then East West Bank shall be entitled to pursue any and all rights and remedies under the applicable East West Loan Documents and applicable state law.

**4.1.5.** At all times during which the East West Bank Claim has not been paid in full, Debtor shall be required to satisfy the following conditions, and, upon demand, provide written proof thereof to East West Bank:

(a)    Pay all pre-confirmation delinquent property taxes, penalties and interest encumbering the Real Property no later than thirty (30) days following the Effective Date.

(b)    Pay all post-Effective Date property taxes encumbering the Real Property in the ordinary course when they are due.

(c)      Maintain adequate insurance on the Real Property conforming to, at a minimum, any requirements in the East West Loan Documents.

Class 1 is impaired under the Plan. Holders of Class 1 claims are entitled to vote on this Plan.

**4.2.**   Class 2 - Other Secured Claims.  Each holder of an Allowed Secured Claim in Class 2 shall receive on account of such Claim, on the Initial Distribution Date or on such other date thereafter as may be agreed to by the holder of such Claim, Cash equal to its Allowed Secured Claim in full satisfaction and release of such Allowed Secured Claim.  Creditors in Class 2 are unimpaired under the Plan. Holders of Class 2 claims are not entitled to vote on this Plan.

**4.3.**   Class 3 – Unsecured Priority Claims.  Unsecured Priority Claims shall be paid in full on the latest of: (i) Distribution Date; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as is practicable; (iii) the tenth (10th) Business Day after such Claim is Allowed, or as soon thereafter as is practicable or; (iv) such date as the holder of such Claim and Reorganized Debtor have agreed or shall agree.  Class 3 is unimpaired under the Plan.  Holders of Class 3 Claims are not entitled to vote on the Plan.

**4.4.**   Class 4 - General Unsecured Claims.  Except to the extent that a Creditor with an Allowed General Unsecured Claim agrees to less favorable treatment, each Creditor with an Allowed Claim in Class 4 shall receive Distributions as follows:

**4.4.1.**  Initial Distribution.  Each Creditor with an Allowed General Unsecured Claim as of the Initial Distribution Date will, on such date, be paid its Pro Rata share of the Initial Distribution Amount, being the Pro Rata share of the remainder of the Exit Facility after payment or set aside for all other items per the Budget.

**4.4.2.**  Subsequent Distributions. Promptly upon the occurrence of a Sale or Refinancing of the Real Property, the holders of General Unsecured Claims shall received Pro Rata Payments in cash up to the remaining amount of such Allowed Claims to the extent of value of all property and assets belonging to the Reorganized Debtor (if any) after first paying or making allowance for payment of the following such Allowed Claims:

(a)      All obligations secured by property of the Estate or of the Reorganized Debtor including all pre-petition Secured Claims;

(b)      All classified and unclassified Administrative and Priority Claims;

(c)      All actual or projected expenses of closing of the Sale or Refinancing of the Real Property, including real estate commissions, escrow fees and other closing costs;

Creditors in Class 4 are impaired under this Plan and are entitled to vote on this Plan.

**4.5.**   Class 5 – Insider Claims.  Except to the extent that a Creditor with an Allowed Claim in Class 5 agrees to less favorable treatment, and subject to the priorities and preferred distributions provided in Debtor's Operating Agreement and other governing documents, promptly upon the occurrence of a Sale or Refinancing of the Real Property, each Creditor with

12

an Allowed Claim in Class 5 shall receive Pro Rata Payments in cash up to the amount of such Allowed Claims to the extent of any remaining value of all property and assets belonging to the Reorganized Debtor (if any) after first paying or making allowance for payment of all Allowed Claims of every other Class except Class 6 (Equity Securities), and any for the following:

      **4.5.1**  All obligations secured by property of the Estate of or the Reorganized Debtor including all pre-petition secured claims;

      **4.5.2**  All classified and unclassified Administrative and Priority Claims;

      **4.5.3**  All post-petition obligations of the Debtor or Reorganized Debtor, including but not limited to the Exit Facility;

      **4.5.4**  All actual or projected expenses of closing of the Sale or Refinancing of the Real Property, including real estate commissions, escrow fees and other closing costs;

Creditors in Class 5 are impaired under this Plan and are entitled to vote on this Plan.

      **4.6.**  Class 6 - Equity Securities.  On the Effective Date, the Equity Securities of the Debtor shall retain all of their legal interests.  Holders in Class 6 are unimpaired, are deemed to have accepted this Plan, and are not entitled to vote on this Plan.

**5.**  **MEANS FOR IMPLEMENTATION OF PLAN**

      **5.1.**  Plan Implementation Occurring on Effective Date.  On the Effective Date, the following events shall occur in the following sequence:

      **5.1.1.**  On the Effective Date, as permitted by Section 1123(a)(5)(B) of the Bankruptcy Code, Debtor shall convey, assign, transfer and deliver to Reorganized Debtor, and Reorganized Debtor shall acquire and accept all of the right, title and interest in and to all of Debtor's assets, including right, title, and interest being assumed by Reorganized Debtor in the assumed Executory Contracts and assign to Reorganized Debtor (collectively, the "Transferred Assets").

      **5.1.2.**  Debtor shall use reasonable efforts to cooperate with Reorganized Debtor, including executing such documents as Reorganized Ravello shall reasonably request, in order to effectuate the transfer of the Transferred Assets to Reorganized Ravello and/or assist Reorganized Ravello in obtaining the issuances of substitute Licenses for the operation of the Transferred Assets.

      **5.2.**  Exit Facility.

      (a)  The Reorganized Debtor shall be authorized to (i) enter into the Exit Facility and incur the indebtedness thereunder, and (ii) issue, execute and deliver all documents, instruments and agreements necessary or appropriate to implement and effectuate all obligations under the Exit Facility and to take all other actions necessary to implement and effectuate borrowings under the Exit Facility.  The Exit Facility shall be senior in payment only to Class 5 (Insider

Claims) and Class 6 (Equity Securities), and thus shall be junior in distribution to Classes 1 through 4.

(b)      On the Effective Date, the Exit Facility, together with new promissory note evidencing obligations of the Reorganized Debtor thereunder, and all other documents, instruments, and agreements to be entered into, delivered, or confirmed thereunder on the Effective Date, shall become effective. The new promissory note issued pursuant to the Exit Facility and all obligations under the Exit Facility and related documents shall be paid as set forth in the Exit Facility and related documents attached to the Plan Supplement, including but not limited to the payment of interest. All pledges for Exit Financing and all monies advanced shall be fully refundable to the providers thereof unless and until the Court enters the Confirmation Order. Debtor shall have the right to substitute or add additional parties and/or amounts to the Exit Facility as needed prior to entry of the Confirmation Order.

5.3.    Deferral. East West Loan Documents shall be amended as follows:

(a)      Deferral of Principal. Payment of the principal of the East West Claim shall be deferred until the earlier of three (3) years (the "Deferral Period"), or a Refinancing or Sale (as those terms are hereinafter defined) of the Real Property.

(b)      Deferral of Interest and Other Charges. Post-Petition and during the Deferral Period, interest, attorneys' fees and other charges shall continue to accrue on the East West Loan at the Pre-Petition Contract Interest Rate, but payment thereof shall be deferred until the earlier the three (3) years or a Refinancing or Sale of the Real Property, whichever is earliest.  The unpaid accrued interest and other charges shall be capitalized monthly into the outstanding principal balance of the East West Loan.

(c)      Keep Well. All maintenance costs of the Real Property, including but not necessarily limited to real property taxes, insurance and costs to the City of Henderson to preserve entitlements on the Real Property shall be kept current and funded by the Exit Facility.

(d)      Options during the Deferral Period. During the Deferral Period, Debtor shall have the absolute right as follows:

(i)      Refinance the East West Loan; *provided, however*, that the proceeds of such refinancing loan (the "Refinancing") are sufficient to pay all sums due and owing under the East West Loan at the time of closing of such Refinancing, unless East West otherwise agrees; or

(ii)     Sell the Real Property; *provided, however*, that the proceeds of such sale (the "Sale") are sufficient to pay all sums due and owing under the East West Loan at the time of closing of such Sale, unless East West otherwise agrees.

14

**5.4.**    No Stay. Pursuant to Bankruptcy Rules 3020(e), 6004(g) and 6006(d), the Confirmation Order shall not be stayed, and in the absence of any entity obtaining a stay pending appeal of the Confirmation Order, the Debtor and Reorganized Ravello are free to consummate the transactions contemplated by the Plan at any time.   In the absence of such a stay pending appeal, if the Debtor and Reorganized Ravello consummate the transactions contemplated by the Plan, Reorganized Ravello shall be entitled to be found to be a good faith transferee as to the transfer of the Transferred Assets if the Confirmation Order or any authorization contained herein is reversed or modified on appeal.

**5.5.**    Continued Corporate Existence; Reincorporation. The Reorganized Debtor shall continue to exist after the Effective Date as a separate legal entity, in accordance with the applicable laws in the State of Nevada, and pursuant to the Reorganized Debtor Governing Documents.

**5.6.**    Certificates of Incorporation and By-laws. .  The certificate or articles of incorporation, by-laws, articles of organization, or operating agreement, as applicable, of Debtor shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to Section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by Section 1123(a)(6) of the Bankruptcy Code; and, as amended, shall constitute the Reorganized Debtor Governing Documents. The Reorganized Debtor Governing Documents shall be in substantially the forms of such documents included in the Plan Supplement.

**5.7.**    Revesting of Assets. Except as otherwise provided herein, the property of the Debtor's Estate, shall revest in Reorganized Debtor on the Effective Date.   Thereafter, Reorganized Debtor may operate its business and may use, acquire, and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. Except as specifically provided in the Plan or the Confirmation Order, as of the Effective Date, all property of Reorganized Debtor shall be free and clear of all Claims and Interests.

**5.8.**    Notice of Effectiveness. When all of the steps contemplated by Section 6.1 have been completed, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon all Creditors and all potential holders of Administrative Claims known to the Reorganized Debtor (whether or not disputed), a Notice of Effective Date of Plan. The Notice of Effective Date of Plan shall include notice of the Administrative Claim Bar Date.

**5.9.**    No Governance Action Required. As of the Effective Date: (i) the adoption, execution, delivery and implementation or assignment of all contracts, leases, instruments, releases and other agreements related to or contemplated by this Plan; and (ii) the other matters provided for under or in furtherance of this Plan involving corporate action to be taken by or required of Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by the members or managers of Debtor.

**5.10.**    Filing with Nevada Secretary. To the extent applicable, in accordance with NRS 78.622, on the Effective Date a certified copy of this Plan and the Confirmation Order shall be filed with the Nevada Secretary. Again, to the extent applicable, Debtor, from the Confirmation Date until the Effective Date, is authorized and directed to take any action or carry out any

proceeding necessary to effectuate this Plan pursuant to NRS 78.622.

**5.11.** Default Remedies.    If Reorganized Debtor fails to make any payment contemplated by this Plan, fails to satisfy any benchmark provided herein, or otherwise defaults under the terms of the Exit Facility or the East West Loan Documents, as modified by this Plan, and fails to promptly cure such default after being provided with ten (10) days advanced written notice of said default, the party alleging such default shall thereafter be entitled to seek relief from the Bankruptcy Court as a result of such default, including seeking to exercise all rights and remedies available under non-bankruptcy law to enforce its claim as modified herein.    At all times prior to entry of an order of the Bankruptcy Court finding an event of default under this Plan, Reorganized Debtor shall be entitled to cure said default.

## 6.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1.**    Executory Contracts.    All executory contracts and unexpired leases that both exist on the Confirmation Date and are set forth on the schedule of assumed executory contracts and unexpired leases attached as Schedule 6.1 to this Plan shall be deemed assumed by the Reorganized Debtor. Debtor, up to the Effective Date, may modify the schedule of assumed executory contracts, with notice to the non-debtor party to the contract affected by such modification. All executory contracts and unexpired leases not identified on Schedule 6.1 shall be deemed rejected on the Effective Date.

**6.2.**    Approval of Assumption or Rejection.    Entry of the Confirmation Order shall constitute as of the Effective Date: (i) approval, pursuant to Bankruptcy Code Section 365(a), of the assumption by Reorganized Debtor of each executory contract and unexpired lease listed on Schedule 6.1, (ii) approval for Debtor to reject each executory contract and unexpired lease to which Debtor is a party and which is not listed on Schedule 6.1 and neither assumed, assumed and assigned nor rejected by separate order prior to the Effective Date. Upon the Effective Date, each counter party to an executory contract or unexpired lease listed on Schedule 6.1 shall be deemed to have consented to assumption contemplated by Section 365(c)(1)(B) of the Bankruptcy Code, to the extent such consent is necessary for such assumption.

**6.3.**    Cure of Defaults.    The Reorganized Debtor shall Cure any defaults respecting each executory contract or unexpired lease assumed pursuant to Section 6.1 of this Plan upon the latest of (i) the Effective Date or as soon thereafter as practicable; (ii) such dates as may be fixed by the Bankruptcy Court or agreed upon by Debtor, and after the Effective Date, the Reorganized Debtor; or (iii) the tenth (10th) Business Day after the entry of a Final Order resolving any dispute regarding (a) a Cure amount; (b) the ability of Debtor or the Reorganized Debtor to provide "adequate assurance of future performance" under the executory contract or unexpired lease assumed pursuant to this Plan in accordance with Section 365(b)(1) of the Bankruptcy Code; or (c) any matter pertaining to assumption, assignment or the Cure of a particular executory contract or an unexpired lease.

**6.4.**    Post-Petition Date Contracts and Leases.    Executory contracts and unexpired leases entered into and other obligations incurred after the Petition Date by Debtor shall be assumed by Debtor on the Effective Date. Each such executory contract and unexpired lease shall be performed by Debtor or the Reorganized Debtor, as applicable, in the ordinary course of its business.

16

**6.5.** Bar Date. All proofs of Claims with respect to Claims arising from the rejection of any executory contract or unexpired lease shall be filed no later than thirty (30) days after the Effective Date. Any Claim not filed within such time shall be forever barred.

## 7.  MANNER OF DISTRIBUTION OF PROPERTY UNDER THIS PLAN

**7.1.** Distributions. The Reorganized Debtor shall be responsible for making Distributions described in this Plan. The Reorganized Debtor may make such Distributions before the allowance of each Claim and Equity Securities has been resolved if the Reorganized Debtor has a good faith belief that the Disputed Claims Reserve or Disputed Equity Security Reserve is sufficient for all Disputed Claims and Disputed Equity Securities.

**7.2.** No Recourse. No recourse shall ever be had, directly or indirectly, against the Reorganized Debtor or against any agent, attorney, accountant or other professional for the Reorganized Debtor, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking obligation, covenant or agreement whatsoever executed by the Reorganized Debtor under this Plan, or by reason of the creation of any indebtedness by the Reorganized Debtor under this Plan for any purpose authorized by this Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Reorganized Debtor, whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Assets or such part thereof as shall under the terms of any such agreement be liable therefore or shall be evidence only of a right of payment out of the Assets.

**7.3.** Reserves. The Reorganized Debtor shall establish and maintain the Disputed Claim Reserve.

**7.4.** Statements. The Reorganized Debtor shall maintain a record of the names and addresses of all holders of Allowed General Unsecured Claims as of the Effective Date and all holders as of the Record Date of Equity Securities of Debtor for purposes of mailing Distributions to them. The Reorganized Debtor may rely on the name and address set forth in Debtor's Schedules and/or proofs of Claim and the ledger and records regarding holders of Equity Securities as of the Record Date as being true and correct unless and until notified in writing. The Reorganized Debtor shall file all tax returns and other filings with governmental authorities on behalf of the Reorganized Debtor and the Assets it holds.

**7.5.** Further Authorization. The Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions of this Plan.

## 8.  CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**8.1.** Conditions to Confirmation. The Confirmation Order shall have been entered and be in form and substance reasonably acceptable to Debtor.

**8.2.** Conditions to Effectiveness. The following are conditions precedent to the occurrence of the Effective Date:

17

101758-002/719831_3.doc

**8.2.1**   The Confirmation Order shall be a Final Order, except that Debtor reserves the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order, under circumstances that would moot such appeal;

**8.2.2**   No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending, including any appeal;

**8.2.3**   All documents necessary to implement the transactions contemplated by this Plan shall be in form and substance reasonably acceptable to the Debtor; and

**8.2.4**   Sufficient Cash and other Assets are set aside, reserved and withheld (including pursuant to the Exit Facility) to make the distributions required by the Bankruptcy Code and this Plan.

## 9.   TITLE TO PROPERTY; DISCHARGE; INJUNCTION

**9.1.**   Vesting of Assets. Subject to the provisions of this Plan, the Assets shall be transferred to the Reorganized Debtor on the Effective Date, pursuant to Section 6.1. As of the Effective Date, all such property shall be free and clear of all Liens, Claims and Equity Securities except as otherwise provided herein.

**9.2.**   Preservation of Litigation Claims. In accordance with Section 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided herein, all Litigation Claims shall be assigned and transferred to the Reorganized Debtor pursuant to Section 6.1.

**9.3.**   Discharge. As a result of all of Debtor's Assets being transferred, Debtor will not receive a discharge.

**9.4.**   Injunction. From and after the Effective Date, and except as provided in this Plan and the Confirmation Order, all entities that have held, currently hold or may hold a Claim or a Equity Security or other right of a Equity Security holder that is terminated pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such Claims or terminated Equity Securities or rights:  (i) commencing or continuing in any manner any action or other proceeding against the Reorganized Debtor or its respective property; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Reorganized Debtor or its respective property; (iii) creating, perfecting or enforcing any Lien or encumbrance against the Reorganized Debtor or its respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Reorganized Debtor or its respective property; and (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code.

**9.5.**   Exculpation. From and after the Effective Date, neither Debtor, the Reorganized Debtor, the professionals employed on behalf of the Estate, nor any of their respective present or former members, directors, officers, managers, employees, advisors, attorneys or agents, shall have or incur any liability, including derivative claims, but excluding direct claims, to any holder of a Claim or Equity Security or any other party-in-interest, or any of their respective agents,

18

employees, representatives, financial advisors, attorneys or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (from the Petition Date forward), the Chapter 11 Case, Reorganized Debtor, the pursuit of confirmation of this Plan or the consummation of this Plan, except for gross negligence and willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or in the context of the Chapter 11 Case.

No holder of a Claim or Equity Security, nor any other party-in-interest, including their respective agents, employees, representatives, financial advisors, attorneys or Affiliates, shall have any right of action against Debtor, the Reorganized Debtor, the professionals employed on behalf of the Estate, or any of their respective present or former members, officers, directors, managers, employees, advisors, attorneys or agents, for any act or omission in connection with, relating to, or arising out of (from the Petition Date forward), the Chapter 11 Case, the pursuit of confirmation of this Plan, the consummation of this Plan or the administration of this Plan, except for (i) their willful misconduct, (ii) matters specifically contemplated by either this Plan or the Reorganized Debtor and (iii) any liability of an attorney to its client not subject to exculpation under the Bankruptcy Code.

## 10.    RETENTION OF JURISDICTION

**10.1.**    Jurisdiction.    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and the Reorganized Debtor after the Effective Date as is legally permissible, including jurisdiction to:

**10.1.1.** Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Securities or Disputed Claim or Disputed Equity Securities, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Disputed Claims and Equities Securities or Disputed Equities Securities;

**10.1.2.** Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

**10.1.3.** Resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which Debtor or the Reorganized Debtor are party and to hear, determine and, if necessary, liquidate any Claims arising there from or Cure amounts related thereto;

**10.1.4.** Insure that distributions to holders of Allowed Claims and Equities Securities are accomplished pursuant to the provisions of this Plan;

**10.1.5.** Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications or motions involving Debtor or the Reorganized Debtor that may be pending on the Effective Date or commenced thereafter as provided for by this Plan;

101758-002/719831_3.doc

**10.1.6.** Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan or the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;

**10.1.7.** Decide or resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of any Final Order, this Plan, the Confirmation Order or any Person's obligations incurred in connection with this Plan or the Confirmation Order;

**10.1.8.** Modify this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code and Section 12.1 of this Plan or modify any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order or the Reorganized Debtor; or remedy any defect or omission or reconcile any inconsistency in any Final Order, this Plan, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

**10.1.9.** Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation, implementation or enforcement of any Final Order, this Plan or the Confirmation Order, except as otherwise provided herein;

**10.1.10.** Enter and implement such orders as are necessary or appropriate if a Final Order or the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

**10.1.11.** Determine any other matters that may arise in connection with or relate to this Plan, any Final Order, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, any Final Order or Confirmation Order, except as otherwise provided herein;

**10.1.12.** Enter an order closing the Chapter 11 Case;

**10.1.13.** Hea r and decide Litigation Claims and continue to hear and decide pending Litigation Claims and any other claim or cause of action of Debtor and the Reorganized Debtor; and

**10.1.14.** Decide  or resolve any matter over which the Bankruptcy Court has jurisdiction pursuant to Section 505 of the Bankruptcy Code.

## 11.    MODIFICATION AND AMENDMENT OF PLAN

**11.1.**   Modification and Amendment.   Prior to Confirmation, the Debtor may alter, amend or modify this Plan under Section 1127(a) of the Bankruptcy Code at any time.  After the

20

1  Confirmation Date and prior to substantial consummation of this Plan as defined in Section
2  1101(2) of the Bankruptcy Code, the Debtor may, under Section 1127(b), (c) and (d) of the
   Bankruptcy Code, alter, amend or modify this Plan or institute proceedings in the Bankruptcy
3  Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the
   Disclosure Statement or the Confirmation Order, to make appropriate adjustments and
4  modifications to this Plan or the Confirmation Order as may be necessary to carry out the
   purposes and effects of this Plan so long as such proceedings do not materially adversely affect
5  the treatment of holders of Claims under this Plan.

6  **12.    MISCELLANEOUS**

7      **12.1.**    Filing of Objections to Claims or Equity Securities.  After the Effective Date,
   objections to Claims or Equity Securities shall be made and objections to Claims and Equity
8  Securities made previous thereto shall be pursued by the Reorganized Debtor or any other party
9  properly entitled to do so after notice to the Reorganized Debtor and approval by the Bankruptcy
   Court. Any objections to Claims made after the Effective Date shall be filed and served not later
10 than sixty (60) days after the Effective Date; provided, however, that such period may be
   extended by order of the Bankruptcy Court for good cause shown.
11

12      **12.1.1.** Resolution of Objections After Effective Date; Distributions.  Resolution
   of Objections.  From and after the Effective Date, the Reorganized Debtor may litigate to
13 judgment, propose settlements of, or withdraw objections to, all pending or filed Disputed
   Claims and Disputed Equity Securities and may settle or compromise any Disputed Claim or
14 Disputed Equity Security without notice and a hearing and without approval of the Bankruptcy
   Court.

15      **12.1.2.** Distributions.  In order to facilitate Distributions to holders of Allowed
16 Claims and Allowed Equity Securities, and if and to the extent there are Disputed Claims or
   Disputed Equity Securities in any Class, the Reorganized Debtor shall set aside in a designated
17 reserve account the payments or Distributions applicable to such Disputed Claims or Disputed
   Equity Securities as if such Disputed Claims or Disputed Equity Securities were Allowed Claims
18 or Allowed Equity Securities, pending the allowance or disallowance of such Disputed Claims or
   Disputed Equity Securities.  In the event that the Reorganized Debtor wishes to deposit or hold a
19 lesser amount than required herein and is unable to reach an agreement with the holder of the
   Disputed Claim or Disputed Equity Security, on the amount to be deposited or held, the
20 Bankruptcy Court shall fix the amount after notice and hearing.  Upon Final Order with respect
   to a Disputed Claim or Disputed Equity Security, the holder of such Disputed Claim or Disputed
21 Equity Security, to the extent it has been determined to be an Allowed Claim or Allowed Equity
   Security, shall receive from the Reorganized Debtor that payment or Distribution to which it
22 would have been entitled if the portion of the Claim or Equity Security so allowed had been
   allowed as of the Effective Date.  Such payment or distribution shall be made as soon as practical
23 after the order allowing the Claim or Equity Security has become a Final Order.

24      **12.1.3.** Late-Filed Claims.  No Claim filed after the Bar Date or, as applicable, the
   Administrative Claim Bar Date shall be allowed, and all such Claims are hereby disallowed in
25 full.  After the Bar Date or the Administrative Bar Date, as applicable, no Creditor shall be
   permitted to amend any claim to increase the claimed amount; and any such amendment shall be
26 disallowed to the extent of the late-filed increase in the claimed amount.

27      **12.2.**    Effectuating Documents; Further Transactions; Timing.  The Debtor and the
   Reorganized Debtor are each authorized to execute, deliver, file or record such contracts,
28

instruments, releases and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any securities issued, transferred or canceled pursuant to this Plan. All transactions that are required to occur on the Effective Date under the terms of this Plan shall be deemed to have occurred simultaneously. The Debtor and the Reorganized Debtor are authorized and directed to do such acts and execute such documents as are necessary to implement this Plan.

**12.3.**   Exemption from Transfer Taxes. Pursuant to Section 1146(c) of the Bankruptcy Code, (i) the issuance, distribution, transfer or exchange of Estate property; (ii) the creation, modification, consolidation or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with this Plan or the Confirmation Order; (iii) the making, assignment, modification or recording of any lease or sublease; or (iv) the making, delivery or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, Confirmation Order or any transaction contemplated above, or any transactions arising out of, contemplated by or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and the appropriate state of local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**12.4.**   Revocation or Withdrawal of this Plan. The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date. If this Plan is withdrawn or revoked, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtor or any other Person nor shall the withdrawal or revocation of this Plan prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving Debtor. In the event this Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort and this Plan and any transaction contemplated thereby shall be inadmissible into evidence in any proceeding.

**12.5.**   Binding Effect. This Plan shall be binding upon, and shall inure to the benefit of, Debtor, the Reorganized Debtor, and the holders of all Claims and Equity Securities and their respective successors and assigns.

**12.6.**   Governing Law. Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any contract, instrument, release or other agreement entered into in connection with this Plan or in any document which remains unaltered by this Plan, the rights, duties and obligations of Debtor and any other Person arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada's choice of law provisions.

**12.7.**   Modification of Payment Terms. The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim or Allowed Equity Security in any manner adverse only to the holder of such Allowed Claim or Allowed Equity Security at any time after the Effective Date upon the prior written consent of the holder whose Allowed Claim or Allowed Equity Security treatment is being adversely affected.

101758-002/719831_3.doc

**12.8.** Providing for Claims Payments. Distributions to holders of Allowed Claims shall be made by the Reorganized Debtor: (i) at the addresses set forth on the proofs of Claim filed by such holders (or at the last known addresses of such holders if no proof of Claim is filed or if Debtor has been notified of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of Claim; or (iii) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address. Distributions to holders of Allowed Equity Securities shall be made to the holder of such Allowed Equity Security as of the Record Date. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Amounts in respect of undeliverable Distributions made through the Disbursing Agent shall be returned to the Reorganized Debtor until such Distributions are claimed. All claims for undeliverable Distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall revert to the Reorganized Debtor and the Claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary. Nothing contained in this Plan shall require Debtor, the Reorganized Debtor or the Disbursing Agent to attempt to locate any holder of an Allowed Claim or Allowed Equity Security.

**12.9.** Set Offs. Debtor and the Reorganized Debtor may, but shall not be required to, set off or recoup against any Claim or Equity Security and the payments or other distributions to be made pursuant to this Plan in respect of such Claim or Equity Security (before any distribution is made on account of such Claim or Equity Security), claims of any nature whatsoever that the applicable Debtor or Reorganized Debtor may have against the holder of such Claim or Equity Security to the extent such Claims or Equity Securities may be set off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim or Equity Security hereunder shall constitute a waiver or release by Debtor or the Reorganized Debtor of any such Claim that it may have against such holder.

**12.10.** Notices. Any notice required or permitted to be provided under this Plan shall be in writing and served by either: (a) certified mail, return receipt requested, postage prepaid; (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to Debtor:                    Ravello Landing, LLC
                                 c/o David Wechsler and Michael Mahban
                                 2625 N. Green Valley Pkwy, #275
                                 Henderson, Nevada 89014

With a Copy to:                  GORDON SILVER
                                 Attn: Matthew C. Zirzow, Esq.
                                 3960 Howard Hughes Pkwy, 9th Floor
                                 Las Vegas, NV  89169
                                 Fax:  (702) 369-2666

23

101758-002/719831_3.doc

**12.11.** Severability. If any provision of this Plan is determined by the Bankruptcy Court to be invalid, illegal or unenforceable or this Plan is determined to be not confirmable pursuant to Section 1129 of the Bankruptcy Code, the Bankruptcy Court, at the request of the Debtor shall have the power to alter and interpret such term to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.12.** Withholding and Reporting Requirements. In connection with this Plan and all instruments and securities issued in connection therewith and Distributions thereon, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtor shall be authorized to take any and all action that may be necessary to comply with such withholding and recording requirements. Notwithstanding any other provision of this Plan, each holder of an Allowed Claim or Allowed Equity Security that has received a distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation on account of such distribution.

**12.13.** Post Confirmation Reporting. Until the entry of the final decree closing the Chapter 11 Case, the Reorganized Debtor shall comply with the post-confirmation reporting requirements found in Local Rule 3020. Additionally, to the extent required, the Reorganized Debtor shall file post-confirmation quarterly operating reports as required by the United States Trustee Guidelines, paragraph 7.2.

**12.14.** Cramdown. In the event that any impaired Class is determined to have rejected this Plan in accordance with Section 1126 of the Bankruptcy Code, the Debtor may invoke the provisions of Section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan. The Debtor reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

**12.15.** Quarterly Fees to the United States Trustee. Prior to the Effective Date, Debtor, and after the Effective Date, the Reorganized Debtor, shall pay all quarterly fees payable to the Office of the United States Trustee for Debtor after Confirmation, consistent with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

**[Rest of Page Intentionally Left Blank]**

101758-002/719831_3.doc

24

1    DATED this 21st day of August, 2009.

2                                        RAVELLO LANDING, LLC,
                                         a Nevada limited liability company,
3

4

5                                        By: _____
                                         MICHAEL MAHBAN, Managing Member
6

7

8                                        By: _____
                                         RHAUL THACKER, Managing Member
9

10

11                                       By: _____
                                         DAVE WECHSLER, Managing Member
12

13
     **Prepared and Submitted:**
14
     GORDON SILVER
15

16
     By_____
17     BRIGID M. HIGGINS, ESQ.
       MATTHEW C. ZIRZOW, ESQ.
18     3960 Howard Hughes Pkwy., 9th Floor
       Las Vegas, Nevada 89169
19     Attorneys for Debtor

20

21

22

23

24

25

26

27

28
                                         25

     101758-002/719831_3[1]

1    DATED this ____ day of August, 2009.

2                                    RAVELLO LANDING, LLC,
                                     a Nevada limited liability company,
3

4

5                                    By: _____
                                         MICHAEL MAHBAN, Managing Member
6

7
                                     By: _____
8                                        RHAUL THACKER, Managing Member

9

10

11                                   By: _____
                                         DAVE WECHSLER, Managing Member
12

13

14   **Prepared and Submitted:**

15   GORDON SILVER

16

17   By: _____
         BRIGID M. HIGGINS, ESQ.
18       MATTHEW C. ZIRZOW, ESQ.
         3960 Howard Hughes Pkwy., 9th Floor
19       Las Vegas, Nevada 89169
         Attorneys for Debtor
20

21

22

23

24

25

26

27

28

101758-002/Version 719831_3 Plan.doc                        25

1    DATED this 21st day of August, 2009.

2                                    RAVELLO LANDING, LLC,
3                                    a Nevada limited liability company,

4

5                                    By: _____
                                         MICHAEL MAHBAN, Managing Member
6

7

8                                    By: _____
                                         RHAUL THACKER, Managing Member
9

10

11                                   By _____
                                        DAVE WECHSLER, Managing Member
12

13

14   **Prepared and Submitted:**

15   GORDON SILVER

16
     By: _____
17       BRIGID M. HIGGINS, ESQ.
         MATTHEW C. ZIRZOW, ESQ.
18       3960 Howard Hughes Pkwy., 9th Floor
         Las Vegas, Nevada 89169
19       Attorneys for Debtor

20

21

22

23

24

25

26

27

28

                                    25

101758-002/Version 719831_3 Plan[1]

Case 09-15672-bam    Doc 57    Entered 08/21/09 16:55:18    Page 33 of 34

**SCHEDULE 1.1.53**
**TO PLAN OF REORGANIZATION**
**CERTAIN PRESERVED POTENTIAL CAUSES OF ACTION**

All defined terms used herein shall have the meanings set forth in the Plan. The following is a non-exhaustive list of potential parties against whom Debtor and/or the Reorganized Debtor may hold a claim or cause of action. Debtor and the Reorganized Debtor reserve their right to modify this list to amend or add parties or causes of action, but disclaim any obligation to do so. Debtor and the Reorganized Debtor also have, or may have, and are retaining, various claims or causes of action arising under or pursuant to its insurance policies, and all rights arising under, relating to, or in connection with such policies are expressly reserved and retained.

None.

101758-002/719831_3.doc

26

Case 09-15672-bam    Doc 57    Entered 08/21/09 16:55:18    Page 34 of 34

**SCHEDULE 6.1**
**TO**
**PLAN OF REORGANIZATION**
**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

None.

101758-002/719831_3.doc